**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

W.W., *et al., individually and on behalf of all others similarly situated*,

Plaintiff,

v.

Orlando Health, Inc.,

Defendant.

_______________________________________/

Case No. 6:24-CV-01068

Judge Julie S. Sneed

Magistrate Judge Robert M. Norway

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**

## I. INTRODUCTION

Plaintiff W.W. opposes Defendant's Motion to Compel production of her Facebook posts because the requested discovery is irrelevant, overly broad, and disproportionate to the needs of this case under Fed. R. Civ. P. 26(b)(1). This memorandum in opposition is supported by the Declaration of Clint Watson, attached as Exhibit A, and the Declaration of Eric Krause, attached as Exhibit B.

This litigation concerns Defendant's use of tracking technologies on its website to intercept sensitive patient communications involving personally identifying health information ("PHI") and transmit those communications to third parties, including Meta and Google, without patient consent. Defendant now seeks to compel Plaintiff's counsel to review all of Plaintiff's Facebook posts and produce all health-related posts, arguing that any health-related posts might explain advertisements she received or

diminish the confidentiality of her health information. These arguments fail for three reasons:

- Receipt of advertisements is not an element of any claim. Rather, liability turns on disclosure of a communication. Plaintiff's remaining claims—under the Florida Security of Communications Act ("FSCA"), the Wiretap Act as amended by the Electronic Communications Privacy Act ("ECPA"), breach of confidence, unjust enrichment, and breach of implied contract—do not require proof that Plaintiff received targeted ads.
- Plaintiff's privacy settings limit disclosure. Even if Plaintiff posted about her health, those posts were visible only to approved "Friends," not the general public. Defendant's duty to maintain confidentiality is not negated by Plaintiff's private communications with friends.
- Any alleged voluntary sharing of medical information by Plaintiff has no bearing on the commercial value of the PHI that the Defendant extracted from the Plaintiff and Class Members. That is because PHI functions as a non-rivalrous asset: it can be used, copied, and monetized by multiple parties without diminishing its availability, and its fair market value is driven not by scarcity but by the risk, utility, and externalities associated with unauthorized access. As such, the value of PHI where it is disclosed

without permission is not impacted if the owner of that PHI willingly discloses it to another individual or entity.

Not only is Defendant's request incredibly invasive, but it is meant to intimidate and harass the Plaintiff. Plaintiff alleges that she has had her PHI unlawfully transmitted by her health care provider. As such, Plaintiff's counsel does not seek to further intrude upon her privacy by requesting to review all of her Facebook posts when counsel does not believe that information is relevant. To the extent that the Court believes such information is relevant and that Plaintiff must produce it, Plaintiff's counsel will comply with the Court.

## II. FACTUAL BACKGROUND

Plaintiff does not contest Defendant's explanation of the background of this dispute. Plaintiff only adds that Plaintiff's counsel also fully explained its relevance objection through a November 11, 2025 email.

## III. LEGAL STANDARD

A party is entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case." *Tiger v. Dynamic Sports Nutrition, LLC*, 2016 WL 1408098, at *2 (M.D. Fla. Apr. 11, 2016); *Brown v. Vivint Solar, Inc*, No. 8:18-CV-2838-T-24JSS, 2019 WL 10786018, at *1 (M.D. Fla. July 23, 2019). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. Rather, the test for relevance is "whether or not

the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Regions Bank v. Lynch*, No. 2:08-CV-31-FTM-99SPC, 2008 WL 11334993, at *2 (M.D. Fla. Dec. 9, 2008), objections overruled, No. 208CV00031FTMUASPC, 2009 WL 395780 (M.D. Fla. Feb. 17, 2009). The Court has broad discretion in managing pretrial discovery matters and in deciding to compel. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011); *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002).

## IV. ARGUMENT

Plaintiff's Facebook posts are simply not relevant to the legal claims at issue. Plaintiff has remaining claims for violation of the Florida Security of Communications act ("FSCA"), Fla. Stat. 934.01 (Count 1), violation of the Wiretap Act as amended by the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. 2511(1) (Count 2), breach of confidence (Count 3), unjust enrichment (Count 5), and breach of implied contract (Count 6). Order re MTD, Dkt # 38, pp. 4-5, 29. Plaintiff's claim for invasion of privacy was dismissed. *Id.*, p. 29. No claims require proof that Plaintiff received advertisements. Expert testimony and technical evidence will establish Defendant's use of tracking technology and unauthorized disclosure of PHI. Whether Plaintiff posted about her health on Facebook does not alter Defendant's liability and as further explained below, it has not impact on the value of her PHI.

### A. Plaintiff's FSCA, ECPA, Breach of Confidence, and Breach of Implied Contract Claims Require Similar Proof

The elements of Plaintiff's FSCA, ECPA, Breach of Confidence, and Breach of Implied Contract claims all require similar proof. And that proof does not entail showing that Plaintiff received an advertisement as a result of Defendant's tracking technology. Instead, the focus is on whether the communication was disclosed by the defendant.

- The FSCA claim requires showing that Defendant "intercepted, disclosed, or used in violation of ss. 934.03-934.09" Plaintiff and Class Members "wire, oral, or electronic communication[s]." Fla. Stat. Ann. § 934.10. Any advertisement Plaintiff may or may not have received is irrelevant to establishing that claim. In fact, Plaintiff can prove (and has proven) through expert testimony how this technology works, that Defendant employed the technology, and that Defendant disclosed the communications. *See generally*, Plaintiff's Mtn. to Certify Class, Dkt. # 52.
- Similarly, the ECPA claim requires showing that "intercepted, disclosed, or intentionally" Plaintiff's and Class Members' "wire, oral, or electronic communication." 18 U.S.C.A. § 2511(1)(a). Again, receipt of an advertisement is not relevant to proving this claim.
- To prevail on a breach of confidence claim, Plaintiff must show the "unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2022 WL 796367, at *9 (S.D.

Fla. Mar. 15, 2022) (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 932 (11th Cir. 2020)). Plaintiff's theoretical social media activity does not absolve Defendant of this duty. Plaintiff's Facebook settings strictly limit viewership of past and present posts to "Friends" only; she never made these posts fully public. Ex. A, Watson Decl., Ex. 1. Defendant's position implies a dangerous precedent: that if a patient discusses their medical condition with a friend, their medical provider is suddenly released from the duty of confidentiality. This is legally unsound. Furthermore, the core issue in this case is Defendant's unauthorized transmission of Plaintiff's specific appointment request to a neurologist. Therefore, even if the Court finds Plaintiff's social media activity relevant, discovery should be strictly limited to posts regarding that specific appointment request, rather than a generalized search of her medical history.

- Finally, Plaintiff's claim for breach of implied contract is premised on the assumption that her medical provider would keep her PHI confidential. Thus, the proof required for that is similar to the breach of confidence claim.

Thus, none of the claims depend on determining whether Plaintiff received an advertisement. *Root v. Balfour Beatty Constr. LLC*, 132 So. 3d 867 (Fla. 2d DCA 2014) (reversed overbroad social media request).

### B. Plaintiff's Motion for Class Certification Does Not Rely on Advertisements to Prove the Presence of Tracking Technology

Plaintiff does not cite the presence of advertisement in any of the Rule 23 requirements in her Motion for Class Certification. Notably, Plaintiff does not list whether Class Members received targeted advertisements as a Common Question of Law and Fact. Dkt. #52, pp. 14-15. Rather, Plaintiff's Motion only focuses on "whether Defendant's disclosure of PHI to Meta and Google violated state and/or federal law" and "whether PHI of Class Members was transmitted to Meta and Google when patients completed Appointment Request Forms during the proposed class period." *Id.* As discussed above, proof of whether Plaintiff or Class Members received targeted advertisements as a result of Defendant's use of Tracking Technology is not necessary to the claims.

Similarly, Plaintiff's argument that her claims are typical of the Class does not even mention that she received targeted advertisements because it is irrelevant. Notably, her argument for why she is typical of other Class Members is that she, "like all Class Members, had her PHI transmitted to Meta and Google when she used Defendant's Website to complete Appointment Request Forms within the proposed Class Period." *Id.* at 15.

### C. Plaintiff's Expert's Valuation of Health Information Is Not Impacted by whether Plaintiff Has Plaintiff has Posted about Her Medical Issues on Facebook

Defendant contends that Plaintiff's Facebook posts imply she "did not view the information as private," thereby rendering it valueless. (Def.'s Mtn to Compel, Dkt. #62, p. 6). This argument is factually incorrect and economically unsound for three reasons.

First, the scope of Plaintiff's alleged disclosure was strictly limited. Assuming Plaintiff posted about her health, she did not broadcast this information to the general public. Plaintiff's Facebook settings restricted viewership of her posts exclusively to "Friends"—individuals she explicitly approved. Watson Decl., Ex 1. Sharing information within a closed circle of friends does not constitute a waiver of privacy rights, nor does it grant Defendant a license to utilize that data commercially.

Second, personal sharing does not impact the economic valuation of the data asset. Plaintiff's expert, Eric Krause, explains that data valuation differs from tangible goods. PHI is a "non-rivalrous" asset; it can be used or sold by multiple parties without diminishing its availability. Ex. B, Krause Decl. ¶ 8. Therefore, the value of PHI relies not on "exclusivity in possession," but on the "potential uses, competitive advantages, and externalities it generates" for a commercial entity. *Id*.

Krause determined the fair market value of the PHI based on standard economic theory: the price a willing buyer would pay a willing seller for the specific utility of that data. *Id*. ¶ 5, 10. As Krause notes, "risk and utility-based pricing" remains constant regardless of whether the owner shared the information elsewhere. *Id*. ¶ 8. The market value of the data to a third-party advertiser is not reduced simply because the Plaintiff mentioned her health to a friend.

As a means of ascertaining the value of Plaintiff's PHI allegedly disclosed by Defendant, Krause examined various studies and metrics that approximate the value of PHI when it is disclosed. *Id.* ¶ 10. None of the studies or reports that approximate this value are impacted by the owner of the information's separate and willing

disclosure to individuals or entities of its choosing. *Id.* Thus, the core tenet of determining the value of the disclosure of Plaintiff's personally identifying and personal health information is that Plaintiff and Class Members possess the right to determine what to do with this information and that Defendant's disclosure of it for marketing purposes was not done with their consent. *Id.* ¶ 7.

That is because the dispositive issue is consent, not secrecy. The core value of the PHI lies in the Plaintiff's right to control its dissemination. *Id*. ¶ 7. Plaintiff exercised her right to share information voluntarily with friends; she did not authorize Defendant to monetize her patient status for marketing purposes. As Krause concludes, the Plaintiff was deprived of the value of her information relative to Defendant's unauthorized use. *Id.* ¶ 12. Whether Plaintiff made voluntary posts is irrelevant to the value of the asset Defendant took without permission.

### D. Discovery of Plaintiff's Facebook Posts Is Harassing and Invasive

It is self-explanatory that a discovery request requiring Plaintiff's counsel to review all of Plaintiff's Facebook posts is personally invasive. In a suit in which Plaintiff alleges her medical provider disclosed her personal health information without her consent, her medical provider now argues it is entitled to see what she has posted on Facebook related to her health. Because any such posts are not relevant to any of her legal claims, the request is simply harassing and invasive.

### E. Sanctions Are Not Warranted

Plaintiff acknowledges that the parties have met and conferred; however, sanctions are unwarranted. Under Fed. R. Civ. P. 37(a)(5)(A), the Court must not

award expenses if the objection was "substantially justified" or if "other circumstances make an award of expenses unjust." Plaintiff contends that both exceptions apply.

First, the objection was substantially justified because a genuine dispute exists regarding the legal relevance of the material. As the meet-and-confer history demonstrates, counsel have a fundamental disagreement: Defendant argues the Facebook posts are relevant to valuation, while Plaintiff maintains—supported by expert testimony—that private posts have no economic impact on the value of the PHI damages. A good-faith dispute over a novel theory of damages is not sanctionable conduct.

Second, contrary to Defendant's assertion (Mtn., PageID 11), this is not a "routine discovery matter." In *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681 (S.D. Fla. 2011), the dispute involved standard organizational emails. Here, Defendant seeks intrusive access to personal social media communications restricted to Plaintiff's "Friends." Objecting to the production of private, irrelevant social media history is vastly different from withholding standard business records. Because Plaintiff's objections were based on a reasonable interpretation of privacy rights and relevance, sanctions would be unjust.

## V. CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Defendant's Motion to Compel. To the extent the Court grants the Motion, Plaintiff requests that it not award sanctions.

Respectfully Submitted,

*/s/ Clint Watson*
Joseph M. Lyon*
Clint Watson*
**The Lyon Firm**
2754 Erie Ave.
Cincinnati, Ohio 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
*jlyon@thelyonfirm.com*
*cwatson@thelyonfirm.com*

Mariya Weekes (FL State Bar No. 56299)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
Fax: (786) 879-7520
*mweekes@milberg.com*

W.B. Markovits*
Dylan J. Gould*
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court St., Ste. 530
Cincinnati, Ohio 4502
Phone: (513) 651-3700
Fax: (513) 665-0219
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

***Counsel for Plaintiff and the Putative Class***

* *pro hac vice*
** *pro hac vice* pending

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed on December 9, 2025 through the Court's CM/ECF filing system and that all counsel of record receive a copy of the document through that service.

*/s/ Clint Watson*
Clint Watson